### UNITED STATES v. DE MOTT.

*(Commissioner's Court, D. New Jersey.  ——, 1880.)*

1. JURISDICTION — STATE AND FEDERAL COURTS — STOPPING UNITED STATES MAILS—REV. ST. § 3995.—Section 3995 of the Revised Statutes provides that " any person who shall knowingly and wilfully obstruct or retard the passage of the mail, or any carriage, horse, driver, or carrier carrying the same, shall, for every such offence, be punishable by a fine of not more than $100." *Held,* that such statute is applicable to a person stopping a train carrying the United States mail, although he has obtained a judgment and writ of possession from a state court against the railroad company in respect to the lands about to be crossed by such train.

Hearing before Commissioner.

Upon complaint made by the agents of the New York & Greenwood Lake Railroad Company defendant was arrested upon the charge of obstructing the passage of the United States mails carried on a train of the said company.

Upon the examination it appeared that the defendant had placed obstructions upon the rails, and refused to allow the mail train to pass, on the ground that the land belonged to his mother, and that he held a writ of possession issued out of the Morris circuit court against the railroad company.

The conductor of the train told him that the train carried the United States mail, showed him the mail bags, and required him to remove the obstructions, but he refused to do so, and forbade the conductor to remove them, saying that he held possession of the land under an order of the court, and would hold the conductor liable for trespass if the train crossed the land.

The train was run back to a telegraph station for orders, and afterwards returned, and the conductor removed the obstructions, and crossed the land in spite of the remonstrances of the defendant. The train was delayed more than two hours.

*Geo. M. Keasbey,* Ass't U. S. Dist. Attorney, for the Government.

*R. D. Salmon* and *Wm. P. Miller,* for defendant.

PATTERSON, Commissioner. There is nothing of a criminal nature involved in this information. The defendant appeared without any formal service of the warrant to bring him before the commissioner. Nor will any commitment or trial on the charge affect unfavorably his character or standing in the community where he resides.

The allegation is met, contested, and denied fully and squarely on the part of the defendant. His defence, virtually, is a justification of the acts on which he is summoned here, because he was the agent of the legal owner of the land where the offence was committed, who had been placed in actual possession thereof, under the order of a competent judicial tribunal, executed by the proper officer. It is said the judgment thus obtained against the railroad company was founded on the fact that they never had made any compensation to the owner for the right of way taken for the construction of their track. This is not material to be shown. The decree of the court is sufficient to establish the legal right of the owner to the possession of the property. Nor could the fact of want of remuneration by the relators to such owner, if proven in the case, enter as an element for consideration here. The United States were no party to any laches by the relators in that respect, nor are they alleged to have been or to be cognizant of or privy to that failure by this company, or any preceding organization. In the absence of notice, or of the fact being brought to their knowledge, they would be justified in regarding the title of the relators to the land on which their tracks were laid to be as good as that of any other road over which their mails were carried. They found a road constructed and in running order, and recognized and used it for postal service, just as they do an ordinary highway. To apply the principle of *caveat emptor* to them in such cases, and say they were bound to look up the title of every railroad and spur and branch, and ascertain if it was clear of claim and cloud, would seem to impair, to a serious extent, the efficiency and benefit of the service.

That the defendant has proved he was acting as the agent of the legal owner of the premises is clear. There can be

no question as to who holds the legal title. The protection of individual property belongs to the state tribunals, and never has been vested in any other. This owner, for whom the defendant acts, was correct in invoking judicial authority, and appealing to that for protection and relief. That court has decided that the owner was entitled thereto, and the result is here in this certificate of the officer who carried into effect the remedial process. The defendant claims he should be discharged because he was acting under the authority of that order, and that only. He was holding the possession of the land into which he as agent had been put judicially; that was his authority.

To this the United States reply and say that they do not deny the action of the court, but insist that the authority of the government is paramount. They say: What is alleged on behalf of the defendant may be true, and it may be equally true that the railroad company may never have made compensation to the owner for the right of way, but that is of no moment or consequence to them. Their right is paramount. It is a right they possess under the constitution of the United States, and laws made in pursuance thereof, and those are the supreme law of the land. This road is declared to be a post-route under those laws, and so long as it remains open the United States have a clear right to take and use it for the postal service.

These are the positions assumed by the parties to this complaint, and it raises the direct question whether federal legislative authority, when applied in this intermediate way, is paramount to the state law, by which only the protection of individual property is assured. It is evident, if each stands firmly on the assumed right, the consequences might be very similar to those which would attend the concussion of an immovable body with one that is irresistible.

I regard the power of the United States, in respect to the transmission of mails, to be supreme and exclusive, when exercised in a direct manner, as it is in cases of bank incorporations. If it is so exercised in postal matters then our laws and the constitution, under which they act, would forbid

their taking private property without compensation. If it is not so exercised they can or should acquire no greater right than is conferred by the state on the person or municipal corporation, or is contained in the franchise of a railway charter, like that of the relators here. Should it be admitted or determined that the United States, under circumstances such as are disclosed by this investigation, can claim an absolute right to continue the carrying of their mail matter upon the tracks and in the cars of the company, it might amount to a virtual confiscation of individual property, and state laws become ineffective for its protection. I am not prepared to sanction so sweeping a claim on the part of the United States.

Still, the latter have acquired a right to the use of the road for the purposes in question that is entitled to consideration, that enters properly as an element for determination, and that cannot be disposed of in the summary and annoying manner developed in this case without inconvenience if not detriment to the public interest. While the United States, primarily, should not be compelled to ascertain whether the company have or not acquired full and clear title, yet, when notified of failure by any persons who claim the right under the judicial sanction of the state, and have been placed in actual possession of part of the premises for any reason, it would disclose a fact that no alleged plea of paramount domain would warrant them in disregarding.

The owner of the land was delivered possession on the twelfth of February last, under the remedial process of the state court. She takes it, however, subject to the equitable right of third parties, without notice. No notice whatever appears to have been given to the United States or their agents, on behalf of the owner, of the clear legal right and possession thus acquired. Nor does there appear to have been any time allowed for reasonable notice, as the acts upon which this information is based occurred on the 16th. The agents of the owner have proceeded upon the idea that no other rights were involved than their own; at least, that seems to be so from the testimony.

v.3,no.9.—31

My opinion is that no *ultra* or decisive steps should have been taken by the owner at so early a date. On being advised of the facts the authorities of the United States, in equity, would have been compelled to make compensation, or fall back on the bonds of the company. They would have no fair claim to use the road, upon notice of the facts shown here, unless by agreement with the owner. But until such notice their right to carry the mail remained the same as before.

Under the view I have taken the defendant should not be discharged, simply by reason or virtue of the order of the circuit court of the county of Morris, giving the owner actual possession. It remains to be considered whether he should be held for any of the acts committed on that day—that is, if they constitute the offence in contemplation of the federal statute.

The defendant denies that such acts on his part come within the federal statute, because they were committed under color of right. But the claim of right is set up, too, on the part of the United States, and the fact is that, under the circumstances, both had color of right. The defendant knew that the relators carried the mail of the United States, and the knowledge of that should have been sufficient to put him on inquiry. I mean on such inquiry that he could have ascertained officially, and as a matter of certainty, on just what trains those mails were transported. He claims, also, that what he did was in ignorance of this being a mail train until informed at the place of obstruction, and the statute makes the gist, the intent, of the offence to consist in knowledge; therefore, what he did cannot be brought within its meaning. There is no direct evidence, one way or the other, as to his knowledge or ignorance of the train in question being a public carrier in the service of the United States. So far as appears inferentially the testimony would be in his favor if standing alone and disconnected. It is shown, however, that he admitted having placed the obstructions on the track—an act which his ignorance of the nature of the train in this respect, at the time, does not excuse or justify, because it was of an extreme and might have been of a dangerous character. It appears,

also, that when informed the mails were carried on the train he did not offer to facilitate the passage of the cars by removing the obstructions he had laid down; but after such had been put away by the employes of the relators he told the conductor to proceed at his peril. I think here is a knowledge and intent manifested to which the words of the statute apply. Had the defendant, on learning at the crossing the true state of facts, cleared or assisted in clearing the tracks, and told the conductor then to proceed, and not forbidden him to go on, the case would have been different. As it is, the testimony shows that the acts of Mr. De Mott, whether before or after full knowledge of all the facts, contributed to delay and obstruct the carrying of mail matter by the railroad company, which at that time clearly was lawful. Nor is the strength of this conclusion weakened by the defendant declining to be examined on his own behalf.

It is unnecessary, in my judgment, for the United States to prove an actual contract with the company in this preliminary proceeding, or for the latter to have their authority displayed on their cars. It is sufficient that mail bags and pouches be brought to notice, or the fact be announced by the person in charge. This was done here, and it was notice enough to put any person on guard or inquiry.

It is not without hesitation that I have decided to hold either of these defendants to answer. No doubt they feel aggrieved at the laches or wrong-doing of the company in withholding or retaining the compensation for right of way. Nor am I of the number of those who would extend federal jurisdiction; rather the contrary. It is natural for the owners of land, situated as these have been, to manifest no very friendly feelings toward the relators; still, the rights of others must not be disregarded. The defendants will be held under recognizance in the same amount as now to answer.